

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

DMP:MTK/FJN/SKW                    *271 Cadman Plaza East*
F. #2020R00609                     *Brooklyn, New York 11201*

August 14, 2020

By E-Mail and ECF

The Honorable Peggy Kuo
United States Magistrate Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

    Re:  United States v. Sam Resto
       Magistrate Docket No. 20-M-665

Dear Judge Kuo:

    Later today, defendant Sam Resto ("Resto") is scheduled to be presented before Your Honor on the above-referenced complaint. For the reasons set forth below, the government respectfully requests that the Court enter a permanent order of detention because Resto presents a danger to the community and a risk of flight.

I.  The Offense Conduct[1]

    On July 28, 2020, at approximately 10:40 p.m., Resto purchased gasoline from a gas station located in Elmhurst, New York. Resto was wearing a dark Adidas hat, a dark long-sleeve top, dark jeans, dark Nike sneakers and dark gloves with blue trim with the fingers cut off. At the gas station, Resto used a self-service pump and placed gasoline into a red jerry can that Resto was carrying.

    New York City Police Department ("NYPD") officers conducting surveillance watched as Resto took the red jerry can to his home in Elmhurst, New York. At approximately 11:47 p.m. that same evening, NYPD officers observed Resto leave his home in Elmhurst, New York, wearing what appeared to be the same clothing he wore to the gas

---

    [1]  Detailed herein are a proffer of the relevant facts and a discussion of the applicable law pertaining to the pretrial detention of the defendant. See United States v. LaFontaine, 210 F.3d 125, 130-31 (2d Cir. 2000) (government entitled to proceed by proffer in detention hearings).

station.  Resto was also carrying a backpack.  NYPD officers observed Resto get into a ride share vehicle and travel from Elmhurst to Manhattan.

On July 29, 2020, at approximately 3:50 a.m., an individual later identified as Resto approached a marked NYPD Ford Fusion motor vehicle (the "NYPD Vehicle") parked in the vicinity of 73 West 83rd Street, near the intersection of Columbus Avenue and West 83rd Street.  The NYPD Vehicle was marked "NYPD" and "POLICE" in multiple areas, and bore visible police lights.  Resto was wearing dark clothing and dark gloves similar to what Resto had worn at the Elmhurst, New York gas station approximately five hours earlier.  Resto was also wearing a white mask that covered his face.   Resto broke the front passenger-side window of the NYPD Vehicle with a blunt instrument and poured gasoline into the interior.  Resto then lit the NYPD Vehicle on fire and fled east on West 83rd Street toward Central Park.  NYPD officers obtained video footage of Resto igniting the NYPD Vehicle.  An image of Resto igniting the NYPD Vehicle is shown below.



NYPD officers subsequently found an abandoned backpack in Central Park, near the intersection of Central Park West and West 83rd Street.  The backpack was similar in appearance to the one that NYPD officers had observed Resto wearing approximately four hours earlier when he had left his home in Elmhurst to travel to Manhattan.  A search of the backpack revealed a dark Adidas hat, a dark long-sleeve top, dark jeans, dark Nike sneakers and dark gloves with blue trim with the fingers cut off, all of which were similar to the clothes that Resto was wearing when he purchased gasoline in Elmhurst, New York earlier that evening.  The backpack also contained a white Guy Fawkes mask, a red two-gallon jerry

can similar to the can that Resto was carrying at the gas station in Elmhurst, a hammer, lighters and other items.  The jerry can contained a liquid that smelled like gasoline.

Law enforcement personnel examined the contents of the backpack for latent fingerprints.  A law enforcement analysis determined that two latent fingerprints recovered from the spout of the red jerry can were a match to the defendant Resto's right middle and right index fingerprints.  Law enforcement personnel also obtained cellular tower data for a telephone associated with Resto.  Preliminary analysis of the cellular tower data showed that Resto's telephone was in close proximity to the location of the parked NYPD Vehicle located at 73 West 83rd Street at 3:50 a.m. on July 29, 2020, the approximate time the NYPD Vehicle was set on fire.  Preliminary analysis of cellular tower data also showed that, approximately five minutes later, Resto's telephone was in close proximity to the location in Central Park where the backpack was recovered.

II.  <u>Legal Standard</u>

Under the Bail Reform Act, Title 18, United States Code, Sections 3141 <u>et seq.</u>, federal courts are instructed to order the pretrial detention of a defendant if, after a hearing, the judge "finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community."  18 U.S.C. § 3142(e)(1).  A finding of dangerousness must be supported by clear and convincing evidence.  <u>See</u> <u>United States v. Ferranti</u>, 66 F.3d 540, 542 (2d Cir. 1995); <u>United States v. Chimurenga</u>, 760 F.2d 400, 405 (2d Cir. 1985). A finding of risk of flight must be supported by a preponderance of the evidence.  <u>Chimurenga</u>, 760 F.2d at 405.

The Bail Reform Act lists the following factors to be considered in the detention analysis: (1) the nature and circumstances of the offenses charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release.  <u>See</u> 18 U.S.C. § 3142(g).  As discussed below, these factors weigh heavily against pretrial release.

Evidentiary rules do not apply at detention hearings and the government is entitled to present evidence by way of proffer, among other means.  <u>See</u> 18 U.S.C. § 3142(f)(2); <u>see also</u> <u>LaFontaine</u>, 210 F.3d at 130-31.  In the pre-trial context, few detention hearings involve live testimony or cross-examination.  Most proceed on proffer.  <u>Id.</u> at 131. This is because bail hearings are "typically informal affairs, not substitutes for trial or discovery."  <u>Id.</u> (internal quotation marks omitted); <u>see also</u> <u>United States v.</u> <u>Mercedes</u>, 254 F.3d 433, 437 (2d Cir. 2001) ("[The defendant] has twice been convicted of weapon possession--one felony conviction, and one misdemeanor conviction.  We find the district court committed clear error in failing to credit the government's proffer with respect to [the defendant's] dangerousness.").

III.     The Court Should Enter a Permanent Order of Detention

        The factors to be considered in the detention analysis show that Resto presents a danger to the community and a risk of flight if released on bond.   Accordingly, the Court should enter a permanent order of detention for Resto pending trial.

        A.     The Nature and Circumstances of the Offense Charged

        Resto's criminal conduct was extraordinarily dangerous to the community. Amid the largely peaceful demonstrations taking place across New York City, Resto committed an act of wanton violence.   Resto targeted an NYPD vehicle, broke the window with a blunt instrument, poured gasoline into the interior and lit the NYPD vehicle ablaze. The fire could easily have spread causing widespread destruction to both lives and property and the results could have been tragic.  Indeed, Resto's conduct threatened the safety of multiple human lives, from first responders to residents of homes just feet away from the inferno.

        In listing the "nature and circumstances of the offense charged" as a criterion in the detention analysis, the Bail Reform Act specifically provides that the Court is to consider whether the crime charged is, among others, a crime of violence, a Federal crime of terrorism, or a crime involving an explosive or destructive device.  See 18 U.S.C. § 3142(g)(1).  The charged offense falls within multiple such categories, confirming that Congress viewed this crime as sufficiently serious to factor against release on bond.

        Indeed, as set forth above, Congress recognized the seriousness of the charged offense by specifically enumerating 18 U.S.C. § 844(i) among those offenses that carry a presumption that no condition or combination of conditions will be sufficient to permit a defendant to be released on bond.  Specifically,  Section 844(i), which carries a maximum term of 20 years' imprisonment, is "an offense listed in section 2332b(g)(5)(B) of title 18, United States Code, for which a maximum term of imprisonment of 10 years or more is prescribed," see 18 U.S.C. § 3142(e)(3)(C), and therefore gives rise to a presumption of detention.

        B.     The Weight of the Evidence

        As detailed above, the weight of the evidence in this case is overwhelming. To highlight just a few items:

- Resto was observed by an NYPD surveillance team filling up a red jerry can of gasoline at a gas station in Queens.   These actions were also captured on gas station surveillance video.  Resto's fingerprints were later found to be present on the red jerry can located in the abandoned backpack in Central Park;

4

- Resto, wearing a mask, but in the same clothing as when he left his home earlier in the evening, was captured on video smashing the window of the NYPD Vehicle, pouring gasoline into the interior and lighting the vehicle on fire.

- Resto's abandoned backpack contained what appears to be the exact clothing items that Resto was photographed wearing at the gas station and at his residence prior to leaving for Manhattan. The clothing is also consistent with the individual lighting the NYPD Vehicle on fire. The backpack also contained the red jerry can and Guy Fawkes mask used by Resto.

- Preliminary analysis of the cellular tower data showed that Resto's telephone was in close proximity to the location of the parked NYPD Vehicle located at 73 West 83rd Street at 3:50 a.m. on July 29, 2020, the approximate time the NYPD Vehicle was set on fire. Preliminary analysis of cellular tower data also showed that, approximately five minutes later, Resto's telephone was in close proximity to the location in Central Park where the backpack was recovered.

In sum, evidence ranging from videos capturing Resto's conduct, forensic evidence of fingerprint matches, and cell-site data, among others, overwhelmingly demonstrates Resto's guilt.

   C.   Resto's History and Characteristics

Resto has clearly demonstrated that he is willing to violently attack police property, irrespective of whom he might hurt in the process. More troubling, Resto has shown a penchant for increasingly dangerous behavior over the past month. Indeed, on July 10, 2020, Resto was arrested by the NYPD for allegedly swinging a chain at an individual over a dispute about parking spot at Resto's workplace. Next, on July 15, 2020, Resto was arrested by the NYPD for allegedly obstructing traffic on the Brooklyn Bridge during a demonstration, during which Resto was among the protestors who confronted police officers. Now, Resto has committed a significantly more violent attack in committing arson of an NYPD vehicle. This significant escalation in Resto's criminal conduct, notably despite two prior arrests by NYPD that clearly did nothing to deter Resto from more violent acts, shows that Resto presents a danger to the community.

   D.   The Nature and Seriousness of the Danger to the Community Posed by Release

Resto poses a severe and ongoing risk to the community. Following his arrest, agents searched Resto's place of employment. Located in Resto's desk was a copy of The Anarchist's Cookbook, a book, first published in 1971, that includes instructions for the construction of homemade explosives and explosive devices. In conjunction with Resto's

demonstrated penchant for destruction, the fact that he possessed this book strongly suggests that Resto was studying how to construct homemade explosives and explosive devices.  In light of the fact that Resto has not been deterred by his previous two arrests, there is no reason to believe that he will be deterred by this arrest.  Amid an environment in which certain protests against law enforcement have continued in New York City, the government respectfully submits that Resto, if placed on pretrial release, would return to endangering police officers and civilians.   Given his increasingly unhinged conduct, there is no reason the Court should give Resto the benefit of the doubt that he will respect the Court's orders regarding terms of pretrial release.

      E.    <u>Risk of Flight</u>

      Resto was arrested at his place of employment.  Agents searched Resto's backpack incident to his arrest and found that he had a valid United States passport in his possession at the time of his arrest.   Resto stated to agents, in sum and substance, that he had a feeling that federal agents were going to arrest him today and that he was preparing to flee.  Resto then stated, in sum and substance, that agents would find the walls of his residence spray painted with the words "too late," implying that by the time agents arrived at his residence to arrest him, he would have already fled.  Later that evening, when agents entered Resto's apartment they were greeted with this sight:



      Beyond the obvious risk of flight concerns that this behavior raises, the defendant faces a mandatory minimum sentence of five years' imprisonment and up to 20 years' imprisonment.  The prospect of a lengthy term of incarceration may reasonably further incentivize Resto to flee even beyond his intent to flee to avoid arrest in the first place, and thus establishes that he poses a serious risk of flight.  <u>United States v. Dodge</u>, 846 F. Supp. 181, 184-85 (D. Conn. 1994) (possibility of a "severe sentence" heightens the risk of flight).

IV.    <u>Conclusion</u>

   In summary, for all these reasons, Resto presents a danger to the community and a risk of flight that no set of release conditions can mitigate.  The government submits that there is no set of conditions that will reasonably assure Resto's appearance or the safety of the community, and Resto cannot overcome the legal presumption favoring detention.  Thus, the government respectfully submits that the Court should enter a permanent order of detention pending trial.

         Respectfully submitted,

         SETH D. DuCHARME
         Acting United States Attorney

    By:    /s/
         Michael T. Keilty
         Francisco J. Navarro
         Sara K. Winik
         Assistant U.S. Attorneys
         (718) 254-7000

cc:  Clerk of Court (by ECF)